Canada. Mr. Rossman, good morning. Good morning, Your Honor. Thank you very much. To please the Court, my name is Stuart Rossman. I'm with the National Consumer Law Center in Boston and I represent the appellant in this case, Thomas Vander Luitgaren. I'd like to start off my argument, which dovetails with the preceding argument that the Court just heard. Counsel is the same in both cases. By starting with the plan that is involved in the Vander Luitgaren case, because I think that informs the rest of the discussion, the plan language with regards to the determination of the payment of benefits is clear, succinct, unambiguous, and we do not contest the language in terms of misinterpretation. It states simply, death methods of payment will be based on the benefit option offered by Sun Life at the time of election. That's the language and it's clear. Bottom line, Sun Life retained the total discretion to determine at the time of paying the benefits how it would pay those benefits and the provisions or the terms of those benefits itself. It was able to do so at that point because as the plan was being negotiated with the employer, it was not yet a fiduciary and it could have said any terms that it wanted at that particular time. One of the points that was raised in the appellee's brief is that somehow we are arguing that RAAs could never be used. To the contrary, if at the time of negotiating with the employer to create the plan, the insurance company wished to negotiate with them and put into the plan express language providing that the benefits of the plan would be paid through an RAA and establishing either a fixed interest rate or a floating interest rate that was indexed. It would eliminate all discretion and then when the plan was implemented, it would pay off at the time the death benefit claim was made. But at the time the plan was entered into, the employer had no idea how the benefits were going to be paid when claims were made. More important, when a beneficiary actually filed their claim many years down the road, they still did not know how the benefit was going to be paid. Well, but what they did know was you could look at what the benefits options were that were approved for use at that time. At that time, your honor, that's right. But that's the time that's important to the beneficiary when the beneficiary is cashing it in and the employer was apparently content with this sort of flexible arrangement because we live in fast changing times and there seems to be no dispute in the record but that the benefit options that was available at that time. And we're not contesting that, your honor. They had the unfair discretion to choose but when they made that decision by postponing the decision making from the point of entering into the plan to the point where death benefit was being claimed, the point in time when the beneficiary was the most vulnerable. They just lost someone, they're being told, to mention about someone opening up the can of worms. Ones that opened up the can of worms here was Sun Life. By postponing the decision making to the point where the death benefit was being made, they were required under the verity decision. Excuse me, but the beneficiary wasn't making the choice at that time. I thought it was the plan administrator's choice at that time to pay in any one of the approved methods, one of which was the R.A.A.'s. Absolutely correct, your honor. But what I'm saying is that by postponing the decision to the point where the death benefit was made, when Sun Life made that decision, a decision which we agree they had the ability to make, they had to make that decision subject to their fiduciary duty at that point in time because verity says that mere adherence to the plan is not in and of itself enough under ERISA. That when you retain discretion, they had the right to retain the discretion but they retained it. Once you retain the discretion, you have to exercise it subject to the beneficiary. That seems to be an argument that there's something inherently wrong with payment by R.A.A.? There is nothing inherently wrong if the R.A.A. was established at fund. I forget when it's established. Well, when you establish it at the time of the death, your honor, it is in direct conflict with both the creation of the R.A.A. as well as the interest rate that's being paid. Both of those are in direct conflict with the best interest of the beneficiary. That's absolutely, as a categorical statement, that's absolutely untrue because everything, excuse me, everything depends. In some cases, it is in the best interest of the beneficiary not to receive out of the blue, some poor widow or young person receive out of the blue a six-figure check. In some cases, it operates to the beneficiary's advantage. You know that. I know that. That's common sense. Your honor, that could have been done and here's a very simple way that... But I'm not talking about what could have been done. The fact of the matter is that's one of the retained options and I'm struggling with the notion of why it should make a legally dispositive difference. Whether you say at the outset, we're going to pay this death benefit by lump sum or... No, I understand lump sum. We're going to pay this benefit by depositing it in an RAA or we're going to pay this benefit other than in a lump sum but in any method that at that time is approved under the plan. To me, I don't see where the legal... I see there's a difference, but I don't think the difference is legally significant. Well, I would disagree, your honor, and I believe that every judge that has heard this that the district court has agreed with us. In fact, both Judge Torsen and in fact Judge Saylor in this case both found that the creation of the RAA was in fact an exercise of discretion and here's why, your honor. They could have very easily given the point that you just raised about the concern about the widow having this large amount of money. If they had taken the amount of the benefit and actually deposited it in the State Street Bank so that you would then have a checking account that you could draw down from the State Street Bank, but now the State Street Bank was holding the money, not the fiduciary, then it would accomplish the goal that you were talking about, but what it would avoid was exercising the discretion in a way that benefited the fiduciary, in this case the fiduciary being Sun Life. When Sun Life created the RAAs and retained the money, they were diametrically opposed to the interests of the beneficiary because as far as Sun Life was concerned, the longer that the beneficiary kept the money in the account, the more that they would benefit from it, whereas in the beneficiary's perspective, the shorter that they kept it in there, the Sun Life, as I believe the evidence will show, we're at the summary judgment stage right now, both facilitated and encouraged the consumer to keep the money into that account. Of course they did. It was in their best interest. Similarly, your honor, and I think Judge McAuliffe raised the issue in the previous argument at this point, there is no mention in the plan about interest or interest rates. I would argue that if at the time of establishing the plan, they had set an interest rate at that point in time, that would have been perfectly satisfactory. If they had set a floating scale that was indexed to something at that point in time, it would be fine. But there's no mention in the plan of any interest whatsoever. And to then turn around at the date of the payment of the benefit and say, okay, now we're going to be paying interest, which we're not obligated to do, but we're going to do so in a way that benefits us, meaning we're going to give more to us than we're going to give to the beneficiary, that is a clear violation of the fiduciary duty established by ERISA. There's nothing wrong with having options. They could have paid lump sum. They could have taken the money and placed it in State Street Bank. They chose a way that benefited them at the expense of the consumer. A question I didn't ask Mr. Bell. I'm right here for you, Your Honor. But why isn't the simple answer that if you don't like the interest rate that's provided, you write the check to yourself in the full amount, and you take it across the street and put it in an account that pays you a satisfactory interest rate? Absolutely right. It's a good point, and I think it actually goes to Judge Selya, who is outstanding, and I want to respond to that as well, because I think it goes hand-in-hand. Rule 404, I'm sorry, Section 404 provides an absolute right. It's an absolute mandatory obligation of fiduciary duty to you. The Edmondson case raises this notion that somehow the beneficiary is the one that's exercising discretion, because they have the right to be able to withdraw the money whenever they want, and they do have the right. Mr. Vander Lutgeren here withdrew the funds within 7 to 10 days after receiving the checkbook. Absolutely. But you don't look under fiduciary duty rules at the behavior or the thought or the knowledge of the beneficiary. You look at the duty and obligation of the fiduciary itself. Even Mr. Vander Lutgeren, who moved promptly to remove the funding, had 7 to 10 days wait, and by the way, received $72 worth of interest. One could only imagine if he received $72 how much in that 10-day period of time Sun Life was able to earn. What the discretion of the consumer goes to is not whether or not there is a fiduciary duty that Sun Life has. It goes to the determination of how much disgorgement should occur. The longer it takes the beneficiary to take the money out, the more money that Sun Life has made and has been unjustly enriched. The shorter amount of time means there's less. It's conceivable that there could be a breach of fiduciary duty and nothing to disgorge because there was nothing profitable being made, but in this case we have not been able to get to that issue other than the fact that on summary judgment there's a stipulation that Sun Life earned more than a de minimis profit, so we know that they made a profit on this matter. If they're exercising the discretion by creating the RAAs, if they're exercising discretion by unilaterally deciding what the interest rate is, then they are exercising discretion which is subject to fiduciary duty under ERISA, and the standing, Your Honor, is that there owes them 100% loyalty and not acting against their self-interest. Yes, there was certainly the right for Sun Life to exercise discretion. They exercised that poorly. They exercised it poorly because they did so in a way that was diametrically opposed to the interests of the beneficiary. This may not be relevant, but I'm just curious, is there any evidence in the record as to what savings banks were paying at this time on regular savings accounts? No, Your Honor, we're at the summary judgment phase. This account was paying at 2%, and my belief is that that's probably less or equivalent to what banks were paying at the time. I would suggest, Your Honor, that you're looking at the wrong figure. The figure that we would believe will show is that what Sun Life was earning. Oh, I know. You're looking at a disgorgement remedy. Excuse me, you've already said that you wouldn't be here complaining if they put this in an account with State Street. So the natural question that comes to my mind is what interest rate would State Street have been paying at the time, and I suspect the interest rate is no more than or in the same range as the 2% interest rate that was being paid on this account. That's true, Your Honor. I think that the answer to you is that we're not looking for damages for the beneficiaries. When you have a breach of fiduciary duty, traditional trust law as well as consistent law under ERISA says that when a fiduciary breaches its fiduciary responsibilities, the proper remedy is that if they benefited by breaching that, they must disgorge that amount. The reason why you do that is not merely to punish them, but it's to serve as a deterrent for other fiduciaries not to act the same way. As you said, you're not here at this point, and that's in Judge Torreson, of course, in the other case. That's a different matter. He reached the remedy question and disagreed with you on the disgorgement, but I believe that that is in fact the argument, and it is traditional law under trust law as well as under ERISA, and I believe under the Amara decision from the Supreme Court, clearly recognizing that that is the proper remedy for breach of fiduciary duty. Now, does that end up being a windfall for the consumers, which is the beneficiaries, which has been argued by the other side? It may very well be that they were not expecting to get that. However, if funds are being disgorged, there is no better place to put it than to give it to the individuals whose funds were used in order to create that profit, and more important, there is case law in this circuit cited in our brief, which clearly says that if you have a choice between allowing a fiduciary who's breached their duty to keep the spoils of their error, or by giving it to the beneficiaries, you'd rather do the latter than the former, because at the minimum, what you're trying to do is to deter fiduciaries from acting in an appropriate fashion. And so that is the proper remedy, if and when we get back to that point. But at this point in time, the most important part is that under Section 404, they were – and under MoGIL, and under Verity, on which MoGIL is relying upon, they were exercising discretion at the time that the benefit was being – was being claimed by choosing, first of all, to put it in an RAA among all the options that they had available, and second of all, by unilaterally choosing the interest rate, both of those being diametrically opposed to the interests of the – of the beneficiary. I do want to briefly state that I believe that MoGIL is clearly governing in this case. Even though MoGIL is talking about lump sums, it's also talking about the duties of acting as a fiduciary with regards to the benefits. But the language on which you rely in MoGIL, quite frankly, is dictum. It's not necessary to the result. That case turns on the fact that a lump sum payment was promised and not delivered. Well, I find – I'm certainly not an appellate court judge, nor do I play one on TV, but I believe that certainly when the court in MoGIL said, more important, it would seem to me that by signaling that it was more important, that that was certainly more than just dictum and the interpretation on where that goes. But I think that, you know, Section 404 is broader than Section 406. Whether or not you find this is a plan asset or not, which has been briefed and discussed beforehand, I believe 404 is a catch-all, and that 404 would apply to any breach of fiduciary duty, including mishandling of the assets of a plan. And under that circumstance, it was some life that chose to retain the discretion. It was some life that deferred the exercise of that discretion to the point where it was paying off the claims, at which point they had their beneficiaries literally at their mercy. And I believe that their policies – That's where I tend to lose you. I appreciate your argument. It's put the brief in a different light for me. But it keeps for me coming back to you seem to be saying, listen, we're going to give you a defined benefit. Here's the benefit. This amount of money in an RA or other option, as we choose, or if you don't like that, by all means, take that check, write it, and cash it, and walk across the street. And somehow it's a breach of fiduciary duty for me to make that offer once I pay the benefit. Why isn't the role changed from Sun Life to – from planned administrator to insurance company? And I guess, your Honor, the critical statement in your definition is that you say once you pay – and I believe under Mogul, I believe under Kressler – I pay the benefit as promised in the plan. But the point is that – Done. And if they had put that money into the State Street Bank – No, but the plan doesn't say I'll put it in State Street. It says I will pay the benefit this way. The difference between putting it in State Street Bank and I will close because I think it's a good place to do so, if you'll allow me to do so, your Honor. It is the definition of what a fiduciary is in a – under ERISA. And I think that that clearly indicates it. A fiduciary is one who exercises discretionary authority, control, and responsibility in the administration and management of ERISA plans. And I would argue to you that at the time that – under the scenario you discussed, they were exercising discretionary authority. They had control of the money. It was in their account. And it was their responsibility to the beneficiaries. We are fortunate here that Sun Life invested their funds wisely. We do not want fiduciaries under any circumstances for the individual who doesn't know well enough the next day to go and cash the check but leaves it there a week, two weeks, 30 days, 60 days. We don't want to deal with that line drawing. And Congress didn't want to have that line drawing either. They said to fiduciaries, do not do this. If you're going to retain discretion, you may not exercise that discretion in any way that benefits you, no matter what the beneficiary could do. Sun Life retained that discretion. They did not exercise that discretion in a way that met their standards as a fiduciary to the beneficiaries. And therefore, the summary judgment should be overturned in this case, remanded back to the district court for further proceedings. You don't want to risk Sun Life failing before the money is paid over, but you're willing to risk First Street or State Street Bank failing. What is the difference? Well, the difference is, by the way, is that, you know, first of all, in comparing with many things, it's what rights the individual beneficiary would have if the money was being held by a bank, which, by the way – It's the same right, write a check and – Well, the point is if the bank is an FDIC-covered bank, then they're recovered on that. And by the way, a check is different. It's a negotiable instrument. All sorts of rights that I have when I've got a negotiable instrument are different than a book of drafts. Thank you very much. Good conversation. Thank you, Your Honor. Good morning, Your Honor. It's Bernd Decker for the defendant Sun Life Insurance Company of Canada. Good morning. Judge McAuliffe, you articulated the premise of ERISA that is dispositive of this case that has been longstanding since the Russell case in 1985, which is what is ERISA's repeatedly emphasized purpose is to protect contractually defined benefits. It doesn't protect substantive rights. It doesn't protect benefits as a general proposition. It protects, as you articulated, the benefits that are promised by the plan. And so, as Judge Selye articulated, the directly on point support as impressive, which indicates that when a claims administrator provides all the benefits defined by the plan in a form permitted by the plan, it has discharged its fiduciary duties and it has discharged the plan's obligations to the beneficiary. And I emphasize the plan because fiduciary duties only exist with respect to a plan. That is the end of the ERISA relationship. And plaintiffs for 40 years have been trying to argue that a scenario exists under which I can get more than what the contractually defined benefits are. And the Supreme Court and this Court have rejected those efforts. It's not just Faber, Edmondson, and DOL. It's Russell. It's Kennedy. It's McCutcheon. It's Himeshoff. All these cases are cases where plaintiffs are saying, I should be able to get more for whatever reason than the contractually defined benefits, with the Court rejecting that. This Court's decision in Alves, its decision in LaRocca, its decision in Watson, and Turner v. Fallon, all of these cases directly reject the notion that plaintiffs' beneficiaries are entitled to anything more than their contractually defined benefits. Instead, what the Court says is that the plan is at the center of ERISA. It's the linchpin of a system that is not so complex that we unduly discourage employers from adopting benefits plans in the first place. And what Kennedy says is, how do we do that? We focus on the plan. When it's time to pay benefits, what's supposed to happen is that the claims administrator is supposed to look at the plan and determine whether or not the plan permits what it wants to do. And if it does, and if a plan permits that, it's discharge of duties. What Kennedy says is, when you start going beyond that, you start developing unknowable standards of what it's supposed to do, that's directly contrary to the purpose of ERISA of encouraging the formation of benefits plans. Because plan sponsors don't have to provide any benefits at all. And they can provide benefits in any form that they want to, including, as is the case every single time, a benefits plan that provides discretion to the claims administrator to determine what the plan provides. So if the plan is silent as to how you calculate the benefits, as exactly was the case in Concrite, the claims administrator has discretion to determine a payment method that is consistent with the terms of the plan. And if it does that, it discharges its fiduciary duty regardless, as the court in Concrite and in Glenn held, if the effect of that decision is a profit for the claims administrator. When a plan says, we will pay your benefits sometime between 15 days and 30 days after the claim is approved, it's not a breach of fiduciary duty to pay in 29 days because the plan allows that. And the administrator has discretion to make that determination. That's the clear case from the Seventh Circuit. Another illustration is the Nord case, where the plan doesn't say anything about whether you have to defer to treating physicians' opinions. But the Supreme Court says, and the Ninth Circuit said you should have to do so because that would be in the interest of the beneficiaries. The Supreme Court said, no, we want to encourage discretion and flexibility in the administration of benefits plans because that is what encourages employers to adopt them in the first place. So the plaintiff has flicked and turned on its head this notion of discretion. And its position is clear and clearly erroneous when the plaintiff says, any exercise of discretion under a defined benefit welfare plan like this, the result of which is a profit for the insurance company, is itself a breach of fiduciary duty. We know that to be absolutely incorrect. And that's the only breach that they allege. The profit. Now the Edmondson Court, I think, succinctly explained why that's not a breach of fiduciary duty. Because again, the setting up of an REA does not command or require that the insurance company make a profit. That's totally in control of the beneficiary. But it's beyond that. It's Glenn. It's Concrite. It's all of these cases, Alves and LaRocca, that say what you get is your contractually defined benefits and you don't get any more than that. And the notion that the effect of a decision is a profit is exactly what the Glenn Court specifically rejected, Your Honor. Again, I think we've talked about the fact that Mogul isn't in any way contrary to anything I've said. The Mogul Court, again, said that you can get by a motion to dismiss in a case where the plan calls for a lump sum. And under a plan that had no discretion. There was no discretionary grant there. And again, that's what makes a lump sum piece of Mogul essential to its holding. Because the allegation was that a lump sum transfers benefits in a way that a check does not. But Mogul says nothing about what the standard is for a breach. And it certainly doesn't say in derogation of 40 years of ERISA precedent that when you do make a benefit payment pursuant to the plan and a form allowed by the plan, that that's a breach of fiduciary duty. It says nothing about that. And if it did say that, it would be not only creating a circuit split, if you interpreted it that way, under a statute that's supposed to be uniform. It would also be directly contrary to this Court's own precedent in LaRocca. Which, again, that was a situation where there was a clear breach. The fiduciary exercised this discretion to kick the beneficiaries out of the plan. And the beneficiaries said, well, what we're entitled to do is disgorge the profits that you made in doing so. And they made profits because they saved all the premiums that they otherwise would have had to pay. And this Court said, no, what Congress, the Congressional balance requires us to do is to limit the benefits to the contractually defined benefits. So once you get those, that's all you're entitled to. And it's ironic that the plaintiffs rely on verity for the notion that you can get more than contractually defined benefits. Because it was verity that the LaRocca Court relied on to hold that recovery is limited to the contractually defined benefits. Plaintiffs have not explained how it is that the beneficiaries who were clearly wrong, where the fiduciaries stood between them and their contractually defined benefits, were not entitled to disgorgement of the insurer's profits in that situation. And these plaintiffs are, when what they received was everything the plan required Sun Life to deliver and more. Because the plan did not require Sun Life to provide interest and Sun Life did provide interest to the tune of 70-some odd dollars. So it's clear that this Court interprets verity completely differently than the plaintiffs do. If you want to talk about, we can even go deeper in verity. What verity talks about is different kinds of fiduciary duties. There are the duties that are explicit in exercising the powers conferred by the plan. That's interpreting the plan and paying benefits. And then there are those powers that are implicit, that are necessary and appropriate for carrying out the purpose of the plan. What kinds of powers are those? Giving information to the beneficiaries about their contractually defined benefits. And if you do that and if you lie, if you lie to them, is what verity says, then you're a fiduciary, you've breached your fiduciary duty and we're going to make you whole. And how do you make them whole? By giving them their contractually defined benefits. And no more. There's no discussion in verity about a windfall, even in the case of a breach, which we don't have here. Because, again, all ERISA protects is contractually defined benefits, as Justice Roberts said in Concrete, Justice Sotomayor said in Henry v. Champlain. It doesn't confer substantive rights or provide for a windfall. That's not what ERISA does. And, again, verity went even further to say when you're exercising that first kind of discretionary powers, interpreting the plan and paying benefits, that's the exclusive province of Section A1B of ERISA. And that's important because Section A1B has safeguards that you've all heard in the cases you've heard, limiting the plan to the administrative record, exhaustion of administrative remedies, all these things that are designed to fulfill the purposes of ERISA and encourage the formation of benefits plans. So if you have a complaint about the way that the company interpreted the plan or paid benefits, that's where you need to go. You need to go to A1B, bring your claim, exhaust administrative remedies, and let the court decide. The notion that what Sun Life was doing is anything other than that is simply a shell game by the plaintiffs. The plan calls for payment. Sun Life has to determine what is a permissible form of payment under the plan. It decides that a retained asset account that provides all the benefits given control to the beneficiaries is that. If they have a complaint about that, what verity says is A1B provides the exclusive remedy for you to challenge that. They didn't do that because obviously it's a claim that would fail under A1B, but that's an important verity bar against repackaging. It's exactly what the plaintiffs are violating in this case. Let me just go to planned assets for a second, Your Honors. The DOL has made crystal clear what the test is for whether something is a planned asset. Does the plan have an ownership interest in the assets in question? How do you determine that? You look to the plan documents. Is there anything in the plan documents that gives the plan an ownership interest in these funds? The plaintiffs have not pointed to anything. Anything in the plan or anywhere else that says the plan has an ownership interest in these funds. And again, that test makes sense because the plan is at the center of ERISA. And when the plan is out of it, when you've delivered the benefits that are called for, as this court held in DeMars, ERISA no longer governs the relationship. And again, the plan sponsor can choose whatever plan it wants, and the plan sponsor in this case is also the plan administrator. It actually delivered the checkbook to the beneficiary. It has every right to adopt a plan that gives the fiduciary discretion to determine what is the benefit provided for by the plan. And if it thought in purchasing such a policy that it was buying for itself, extended fiduciary duties when the plan obligations had already been fulfilled, it wouldn't do that and this whole method of payment wouldn't be around. Unless the court has any further questions, I'll close. Thank you.